United States District Court
Southern District of Texas
**ENTERED**
April 15, 2021
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TAMMY ALVARADO, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:19-CV-2148 |
| | § | |
| CLARK, LOVE & HUTSON, G.P., *et al.*, | § | |
| | § | |
| Defendants. | § | |

### ORDER

The Defendants, Clark, Love, & Hutson, G.P., Clayton A. Clark, Clayton A. Clark, Esq., P.C., Shelley Hutson, Hutson Law Firm, P.C., Scott A. Love, and Scott A. Love, P.C. (hereinafter collectively referred to as "CLH" or the "CLH Defendants") filed a Motion for Summary Judgment. (Doc. No. 95). Their co-Defendants, Lee Murphy Law Firm, James Lee Law Firm, P.C., and Erin Murphy (hereinafter collectively referred to as "Lee Murphy" or the "Lee Murphy Defendants"), filed their own Motion for Summary Judgment (Doc. No. 96) as well as their joinder in and adoption of the motion filed by the CLH defendants. (Doc. No. 98).[1] The Plaintiffs, Tammy Alvarado ("Alvarado"), Clara Redmond ("Redmond"), Tammy Haga ("Haga"), Amy Ruminski ("Ruminski"), and Pamela Johnson ("Johnson") (collectively referred to as "Plaintiffs"), have responded to all three motions. (Doc. No. 105). The CLH Defendants replied to that response (Doc. No. 111) and the Lee Murphy Defendants likewise filed replies. (Doc. Nos. 113, 114). Plaintiffs then filed a further reply (Doc. No. 115) to which the CLH Defendants filed a sur-reply. (Doc. No. 116). Finally, Plaintiffs filed a sur-response to this last filing. (Doc. No. 117). Several of these briefs exceeded this Court's standard briefing rules, but the Court allowed them to be filed as it

---

[1] The Court on occasion may refer to all of the Defendants jointly as "Defendants."

wanted the issues to be as fully briefed as the parties desired, given that this litigation has been hard-fought and, at times, quite contentious.

## I.    Background

The Plaintiffs in this case were all admittedly former clients of the CLH Defendants. There is a dispute as to whether any of the Plaintiffs other than Alvarado, Redmon, and Ruminski were clients of the Lee Murphy Defendants. The Plaintiffs claim they were all Lee Murphy clients, but the Lee Murphy Defendants contend that neither Haga nor Johnson were their clients. (Doc. No. 96). While this dispute may ultimately need to be resolved, for the resolution of the issues currently before it, the Court finds it need not rule on this issue. Instead, it will address the remaining issues, assuming *arguendo* that all of the Plaintiffs were clients of all of the Defendants.

The Plaintiffs hired the Defendants to represent them in the pursuit of their claims against the manufacturers of transvaginal mesh (hereinafter referred to as "TVM" or "the TVM litigation"). The TVM litigation was one of the largest mass tort actions in the last decade. Cases were pursued nationwide, and they involved thousands of plaintiffs, multiple defendants, and hundreds of law firms. There was a federal multi-district litigation (MDL) court in the Southern District of West Virginia (with Judge Joseph Goodwin presiding), as well as various class actions against specific defendants in states such as Tennessee and West Virginia.

The CLH Defendants took a leading role in this litigation nationwide and, with respect to the allegations herein, took the leading role in the representation of the Plaintiffs. The CLH Defendants had been involved in the TVM matters since about 2011. The primary TVM defendants were C.R. Bard, Inc. ("Bard"), Boston Scientific, Inc. ("BSC"), Ethicon, Inc., and American Medical Systems, Inc. ("AMS"). As these lawsuits progressed, bellwether cases were tried around the country with mixed results. In some cases, the plaintiffs prevailed and received substantial verdicts; in other cases, the defendant(s) prevailed and the plaintiffs received nothing.

The Plaintiffs in this case became plaintiffs after seeing and responding to advertisements. According to the Seconded Amended Complaint (Doc. No. 56), Ruminski and Alvarado are citizens of California, Redmond is a citizen of Georgia, and Haga is a citizen of Indiana. (No citizenship was alleged in the complaint for Johnson, but all parties seem to concede that she is also from California.) According to CLH, it has represented and continues to represent thousands of claimants against the TVM manufacturers, including individuals who settled their claims and individuals who had their cases tried.

At some point, CLH began to negotiate aggregate settlements of their clients' claims against the various manufacturers. These settlements included the claims of all five Plaintiffs and comprise an important aspect of the claims being made herein. They all followed some version of the same general pattern. On behalf of all of its clients with claims against a certain manufacturer, CLH would negotiate an aggregate (gross) amount to settle the claims. The clients were given an opportunity to participate in this process as well as the option to refuse to participate. All five Plaintiffs opted to participate. By opting into this process, the participant was not obligated to settle, as they could always refuse to settle if they eventually did not like the offer (or for any other reason). Once CLH and the manufacturer agreed on the overall terms and amount, CLH formally filed a lawsuit in a court so that the settlements could be judicially supervised and blessed. The parties refer to these courts as the "Settlement Courts," but in actuality they were simply (in this case state) courts willing to take on the task. In the instant cases it was the 23rd Judicial District Court of Wharton County, Texas. Once a case was established, CLH would file interventions into that case for all of their clients who had claims against a certain manufacturer.

A short description of the general process will add context. After the bellwether cases set a tone, negotiations began to occur in earnest between various law firms with multiple clients and the defendants. CLH was one of those firms that held negotiations with the defendants. CLH

3

maintains that having many clients lined up against the TVM defendants was a factor in putting pressure on the manufacturers to negotiate. The CLH Plaintiffs and TVM manufacturers reached an aggregate settlement. At the time, neither side knew the identity of or how many of the CLH Plaintiffs would eventually participate.[2]

The settlement process was lengthy and complicated. While the Court will not detail each and every step, it will highlight certain actions as they are relevant to the pending motions. First, the clients were informed about the "aggregate" settlement process, and the firm asked for the plaintiffs to return a signed consent form if they desired to participate in the process. The form did not commit a plaintiff to settle, but it did have the signatories acknowledge certain facts. That consent form (which was signed by each of the five plaintiffs here) contained the following language:

> *Plaintiffs' Counsel have advised me that the proposed settlement is an aggregate settlement.* An aggregate settlement is one in which a single offer is extended to resolve a number of individual lawsuits or claims. Plaintiffs' Counsel have explained that when an attorney who represents two or more clients settles multiple cases on behalf of many clients without individual negotiations on behalf of any one client, the settlement is ethically and legally permitted as long as each client has had an opportunity to agree to the terms of the aggregate settlement, after consultation, including disclosure of the existence and nature of all the claims and of the nature and extent of the participation of each person in the settlement. The ethical issue arises when there is a fixed overall settlement amount that must be allocated among multiple claimants, where the amount allocated to each claimant can affect the amount(s) allocated to other claimants. However, with informed consent by each client regarding the terms of a settlement and the method of allocation, such conflicts of interest are resolved.
>
> Based on discussions with Plaintiffs' Counsel, who have explained the proposed Settlement to me, *I understand that under the Settlement an independent Special Master appointed by a court will determine each claimant's settlement amount, based on a review of the claimant's medical condition(s) and treatment as reflected in their medical records, and other relevant information related to their claim.* I understand that Bard will have no role in determining or allocating any claimant's

---

[2] The crux of Plaintiffs' claims in this case is that Defendants let the statute of limitations run on their respective claims, resulting in harm to them. The fact that during the aggregate settlement process neither side knew which Plaintiffs would actually participate in the settlement directly undercuts Plaintiffs' theory that the statute of limitations was even a factor in the negotiation process.

settlement amount. *I understand that if I accept the Special Master's allocation, which must be approved by a court, the allocation will be final and non-appealable.* I understand that before any settlement payment will be made, I or Plaintiffs' Counsel will need to provide: a) proof of Bard Pelvic Product identification and relevant medical information required by the Settlement Agreement; b) properly executed releases of all claims against Bard relating to Bard Pelvic Products in return for the settlement amount allocated by the Special master; c) information and authorizations necessary to comply with the reporting requirements related to medical insurance, including Medicare, Medicaid, and similar programs; and (d) if a lawsuit has been filed on my claim regarding Bard Pelvic Products, a stipulation of dismissal of that claim with prejudice.

(Doc. No. 95, Ex. 33) (emphasis added).

At some point the so-called "settlement" lawsuit was filed and the TVM defendant in question answered the lawsuit. The "Settlement" Court then appointed a Special Master whose job was to develop a fair, equitable, and ethical way to apportion the proceeds. The Special Master then sent a letter to each plaintiff that introduced himself, explained the settlement process and criteria, and encouraged the plaintiff to contact him if they had questions. At some point, the Special Master met with the attorneys and developed criteria to develop a fair split of the settlement funds.

Once that criteria and process were developed, the Special Master filed a request for and received preliminary approval from the court for the settlement process. In one of the cases here, the court wrote:

The settlement package proposed to be utilized by Claimants' Counsel provides adequate information to ensure that each Claimant can make an informed decision whether to accept or reject the settlement award as determined by the Special Master. The Court further finds that the Disclosure Letter, acknowledgments, informed consents and Release proposed by Claimants' Counsel fully comply in all respects with Rule 1.08(f) of the Texas Disciplinary Rules of Professional Conduct, American Bar Association (ABA) Model Rules of Professional Conduct 1.7(b), 1.8(g), and Form Op. 06-438, Texas law, and other applicable law as it relates to aggregate settlements, including providing information sufficient to obtain written informed consent by the Claimants.

(Doc. No. 95, Ex. 33 at 27).

CLH then sent the court-approved disclosure letter to each plaintiff, which explained their options, the amount each would receive, and other details describing the aggregate settlement process.

At that step, the plaintiffs were still not obligated to do anything, but if they wanted to participate, they had to execute the form the Court had approved. All five Plaintiffs here opted to participate. Later, but before the Court's final approval, CLH hired a former president of the State Bar of Texas to review the entire process to ensure that the process complied with the dictates of the applicable ethical rules. She so opined.[3]

The CLH Defendants either previously or at that time filed interventions for all the participating plaintiffs into the "friendly" suit that had previously been filed. The plaintiffs then signed the final settlement statement which included the itemization of the distribution of funds. Each plaintiff was told it was her decision to participate or not and each was advised of her right to seek independent counsel. Then, once the process was completed, the Court approved the settlement. (Doc. No. 95, Ex. 33 at 153–57). An example of the approval order stated:

IT IS HEREBY ORDERED:

1.     The Special Master's recommendations for allocations from the Extraordinary Injury Fund to those Claimants identified on Exhibit "A", Amended Exhibit "B", and Amended Exhibit "C" are hereby approved. The Special Master and Claimants' Counsel are directed to notify each Claimant identified on Exhibit "A", Amended Exhibit "B", and Amended Exhibit "C" of the Court's determination.

2.     Claimants' Counsel is further ordered to distribute to each Claimant on Exhibit "A", Amended Exhibit "B", and Amended Exhibit "C" all EIF awards currently held in the 26 C.F.R. § 1.468B-1Qualified Settlement Fund less any (1) attorney fees, (2) outstanding case specific expenses, (3) outstanding common expenses, and (4) any outstanding liens, healthcare or otherwise, that have been

---

[3] The Court notes that, at least in Texas, the Rules of the American Bar Association ("ABA") are not controlling or binding. Even the Texas Disciplinary Rules of Professional Conduct, which are binding on Texas lawyers, contain the disclaimer that the rules do not define "standards of civil liability" nor are they designed to be "standard for procedural decisions." The same paragraph also emphasizes that the Rules do not add to or create any "substantive legal duty." Tex. Dis. R. Prof. Conduct: Preamble Scope ¶ 15.

properly asserted by the lienholder in writing, which specifies the identity of the settling Claimant, the name of the individual and/or institution asserting a lien, and a specific dollar amount for which the individual and/or institution is seeking reimbursement.

3.      Further allocations from the Extraordinary Injury Fund will be addressed in future reports and recommendations by the Special Master.

(Doc. No. 95, Ex. 33 at 154).[4]

Ultimately, all five of the Plaintiffs accepted the proposed settlements. They executed the settlement documents, received the promised funds, and released their claims against their respective manufacturers. In the case of Alvarado, an additional award was sought from a reserve fund established by the Special Master. She submitted additional medical records to the Special Master, who in turn recommended an additional award to her. That award was approved by the Court and she received an additional settlement check. Eventually, she received a third check under the Extraordinary Injury Fund mechanism set up by the Special Master.

None of the Plaintiffs complained about the process, their lawyers, or their recoveries until they were later contacted by individuals they did not know to participate in this lawsuit.

## II.     This Lawsuit

The operative complaint in this lawsuit is the Second Amended Complaint. While the allegations have shifted in their emphasis over the course of this lawsuit, the crux of the allegations is the Plaintiffs' contention that the Defendants let the statute of limitations run on their respective claims and that resulted in harm to them.

They have pleaded three causes of action: (1) breach of fiduciary duty; (2) fraud by non-disclosure; and (3) legal malpractice. The breach of fiduciary duty claim is based upon the allegations that the Defendants missed the statute of limitations and then failed to disclose to the

---

[4] The CLH Defendants have argued that this lawsuit is a collateral attack on the settlement court's judgment and that if this case is not barred by that judgment, it at least should be controlled by it or heard by that court, not this one. The Court finds it need not address these arguments.

Plaintiffs that they had done so. Secondly, Plaintiffs claim that aggregate settlements are "prohibited *per se*" and that the Defendants failed to tell the Plaintiffs that their claims were included in an aggregate settlement of claims that had expired limitations. Finally, they claim that the Defendants breached their fiduciary duties by not advising them that the fees were being shared with different law firms. The fraud count is based entirely upon the Defendants' alleged failure to disclose to Plaintiffs that the statute of limitations had run on their claims. Finally, their legal malpractice/negligence claim is based upon the alleged failure to timely file the Plaintiffs' claims and upon the allegation that the Plaintiffs were coerced or misled into accepting settlement offers that were less than what they otherwise would have been but for the Defendants' failure to timely file the claims.

The Defendants have uniformly denied the allegations and have filed summary judgment motions that not only contest each element of each cause of action, but also contest Plaintiffs' underlying premise: that the statute of limitations on their claims had expired.

**III.    Prevailing Legal Standards**

**A.    Summary Judgment**

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is

genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

The non-movant in a summary judgment proceeding must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Anderson*, 477 U.S. at 248–49). A non-movant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "'significant probative evidence'" from the non-movant to defeat a motion for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The non-movant's burden is also not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *see also Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence."). Likewise, the nonmoving party "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citations omitted).

### B.      Breach of Fiduciary Duty

To prevail on a breach of fiduciary duty claim against her attorney, a plaintiff must prove:

(1) the existence of the fiduciary relationship; (2) a breach of that duty by the attorney defendant;

(3) that causes (4) damages to the plaintiff. *Beck v. Law Offices of Edwin J. (Ted) Terry J., P.C.*,

284 S.W.3d 416, 429 (Tex. App.—Austin 2009, no pet.). The "case-within-a-case" or "suit-within-

a-suit" doctrine, as it is sometimes called, applies both to claims for breach of fiduciary duty and

to claims for legal malpractice/negligence, when the damages sought are based on the attorney's

wrongful conduct in prior litigation. *Taylor v. Alonso, Cersonsky & Garcia, P.C.*, 395 S.W.3d 178,

183–84 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

### C.      Legal Malpractice/Negligence

To recover on a legal malpractice/negligence claim, plaintiffs must prove that: (1) the

attorney owed a duty to each plaintiff; (2) the attorney breached that duty; (3) the breach

proximately caused each plaintiff's injuries; and (4) compensable damages occurred. *Peeler v.*

*Hughes & Luce*, 909 S.W.2d 494, 496 (Tex. 1995). If the legal malpractice/negligence claim is

based on the attorney's acts in representing a plaintiff during prior litigation, the plaintiff must

further prove as part of her causation burden that, but for the attorney's breach of duty, the plaintiff

would have made a greater recovery in the underlying case. *Greathouse v. McConnell*, 982 S.W.2d

165, 172 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). Expert testimony is required to

establish the standard of care, a breach of that standard of care, and causation. *Alexander v. Turtur*

*& Assoc., Inc.*, 146 S.W.3d 113, 119–20 (Tex. 2004); *Onwuteaka v. Gill*, 908 S.W.2d 276, 281

(Tex. App.—Houston [1st Dist.] 1995, no writ); *Arce v. Burrow*, 958 S.W.2d 239, 252 (Tex.

App.—Houston [14th Dist.] 1998) *aff'd in part and reversed in part on other grounds*, 997 S.W.2d

229 (Tex. 1999).

### D.     Fraud by Nondisclosure

Fraud by nondisclosure, a subcategory of fraud, occurs when a party has a duty to disclose certain information and fails to disclose it. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). To establish fraud by nondisclosure, the plaintiff must show: (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the nondisclosure, which resulted in injury. *See Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex. 2001) (explaining that there must be a duty to disclose).

## IV.   Discussion

As stated before, the lynchpin of the Plaintiffs' allegations is the applicable statute of limitations and whether those limitation statutes barred the Plaintiffs' lawsuits at the time they were settled. That is the crux of their Second Amended Complaint and it is almost the sole topic covered by their response to the motions for summary judgment. One need only look at their Table of Contents to see the accuracy of this observation. The topic headings listed in the Table of Contents in their summary judgment response are as follows:

INTRODUCTION..................................................................................3

COMES NOW EACH OF THE PLAINTIFFS HEREIN WITH THIS THEIR RESPONSE TO EACH OF THE MOTIONS FOR SUMMARY JUDGMENT FILED BY THE DEFENDANTS IN THIS CASE.............................................3

I.............................................................................................................3

THE PLAINTIFFS ARE NOT QUESTIONING THE PROWESS OF THE DEFENDANT FIRMS IN SECURING THOUSANDS OF CLIENTS IN THE TRANSVAGINAL MESH CASES AS THEY FREQUENTLY STATE IN THEIR MOTIONS AND IN THE DEPOSITIONS OF THE SENIOR AND MANAGING PARTNERS OF CLH.................................................................3

II.......................................................................................................6

FACTUAL BASIS FOR THE ALLEGATION THAT *THE PAMELA JOHNSON CLAIM WAS NOT FILED TIMELY*...…………………………………………6

III...................................................................................................... 8

FACTUAL BASIS FOR THE CLAIM THAT *THE PLAINTIFF TAMMY HAGA DID NOT HAVE HER SUIT FILED TIMELY BY ANY OF THE DEFENDANTS*.........................................................................................8

IV....................................................................................................10

THE UNCONTROVERTED FACTS SHOW THAT *THE CASE FOR CLARA REDMOND WAS NOT TIMELY FILED*………………...…………………..10

V....................................................................................................11

THE SUMMARY JUDGMENT EVIDENCE FROM THE DEFENDANTS ALONE SHOW THAT *TAMMY ALVARADO'S SUIT WAS NOT TIMELY FILED*…...............................................................................................11

VI...................................................................................................13

THE RECORDS OF THE DEFENDANT SHOW THAT *THE CASE FOR AMY RUMINSKI WAS NOT TIMELY FILED*………...............................................13

VII................................................................................................... 14

*THE CLAIM OF THE DEFENDANTS THAT LIMITATIONS HAD NOT EXPIRED EACH OF THE PLAINTIFFS' CLAIMS BECAUSE OF THE AMERICAN PIPE CASE IS UNSUPPORTABLE*...............................................14
VIII.................................................................................................17

*THE FILING OF A FRIENDLY SUIT BEFORE A "SETTLEMENT COURT" IN WHARTON COUNTY AFTER THE STATUTE OF LIMITATIONS HAD RUN WAS OF NO EFFECT TO CORRECT THE FAILURE TO FILE SUITS TIMELY AS THE "SETTLEMENT COURT" HAD NO JURISDICTION*...........................................................................................17

IX................................................................................................... 18

THE MUCH TOUTED OPTION FOR THE PLAINTIFFS TO SEEK OTHER COUNSEL IS AVAILABLE TO ANY OF THE PLAINTIFFS AS THEIR CASES *WERE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS IN THE JURISDICTIONS OF THEIR DOMICILE*..........................................................................................18

(Doc. No. 105 at 2) (emphasis added).

One can see the emphasis on limitations in the headings. That focus was maintained not only in the headings but also throughout the response, itself.

Clearly there is a difference of opinion between the Plaintiffs and the Defendants as to whether the Plaintiffs' claims were timely filed and/or whether any applicable limitations statute was tolled. The Defendants admittedly did not file any of the Plaintiffs' claims at the time they were actually hired.[5] They were filed by way of interventions into the "friendly" lawsuits filed to facilitate the settlements. They were hired by the Plaintiffs many years before these filings. The Plaintiffs take a simple approach. Using the date when they first called the attorneys as the accrual date, they count out two years (or whatever the applicable statute is) and argue that the statute of limitations would bar any action filed after that date.[6]

The Defendants contend that the Plaintiffs' entire argument is unmeritorious for a number of reasons. First, they point out a number of TVM class actions around the nation in addition to the MDL pending in West Virginia. They then argue the holding in *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), which stands for the proposition that the statute of limitations is tolled for any putative member of a class action, applies here, and contend each Plaintiffs' limitations statute did not run. Further, Defendants contend that they entered into tolling agreements with each TVM defendant manufacturer and that each Plaintiff was protected by such an agreement. (Doc. No. 95 at 38–41). Defendants also put forth various discovery rule arguments, an analysis of which would be quite fact intensive. That analysis is not necessary to resolve the

---

[5] The actual filing dates provided by the Plaintiffs are exact in some instances and less exact in others. The exact dates are: Ruminski, July 20, 2016 (Doc. No. 105 at 14); Johnson, March 20, 1999 (Doc. No. 105 at 9); and Alvarado, February 24, 2017 (Doc. No. 105 at 13). The inexact dates are: Haga, "sometime in 2019" (Doc. No. 105 at 10) and Redmond, "shortly before" September 22, 2016 (Doc. No. 105 at 11).

[6] The Defendants criticize the Plaintiffs' use of the date they contacted the lawyers as the date of accrual, but the Court finds this criticism misplaced. Obviously, the causes of action could have accrued much earlier; however, the Plaintiffs were using this date as a shorthand way of designating a time certain by which each Plaintiff had to have discovered a problem.

pending motions. Suffice it to say, the parties have engaged in a pitched battle over the hypothetical application of the statute of limitations. The Court describes this as a hypothetical situation as none of the cases were ever dismissed due to a ruling that any of Plaintiff's claims were barred by the statute of limitations. It was not ultimately decided by any of the underlying courts involved, and this Court finds a final resolution of this legal issue is not required here.

### A.     Negligence/Malpractice, Causation, and Damages

While the Plaintiffs' briefing has drawn clear battle lines on the issue of the statute of limitations, it has not done so on the issues of negligence/malpractice, proximate cause, and damages.

### 1. Liability

As noted above, one of the three causes of action Plaintiffs have pleaded is legal malpractice. Legal malpractice is another label for professional negligence committed by a lawyer, just like medical malpractice is a label for professional negligence committed by a doctor or healthcare provider. As a general rule, to raise a fact issue for either, one must have expert testimony which sets out the appropriate standard of care and then explains how/why the defendant's conduct fell below that standard.

As pointed out above, when a defendant/movant files a motion for summary judgment that moves for judgment that he/she was not negligent, it is incumbent under *Celotex* for the non-movant to counter such motion with evidence that creates an issue of material fact that the defendant was negligent or, in the parlance of the Second Amended Complaint, that the defendant committed malpractice.  Mere allegations are insufficient. *Morris*, 144 F.3d at 380. The Court needs proper summary judgment evidence and, in fact, in professional malpractice cases it almost invariably needs expert evidence. *Geiserman v. MacDonald*, 893 F.2d 787, 793–94 (5th Cir. 1990).

There are two major problems that permeate the Plaintiffs' responses to the Defendants' motions. First, the non-movants (Plaintiffs) seem to be under the impression they need not contest parts of the movants' summary judgment motion and that somehow those parts mystically survive or avoid the Court's review. This is not true in cases like the instant one, when the movant denies the allegations and moves for judgment as a matter of law on every cause. Once a movant submits a proper motion, the burden shifts to the nonmovant to show the court why it should not grant the motion. *Celotex*, 477 U.S. 317, 321–25 (1956). The non-movant then must provide specific facts showing that there is a genuine dispute of material fact on each element of the cause of action in question. *Id.* at 324; *Matsushita*, 475 U.S. at 587. If the non-movant does not make that showing, the matter is ripe for a judgment to be granted.

Secondly, the burden is not on the Court to search the record to try to identify a fact issue. It is the burden of the non-movant to identify the specific facts that raise a genuine dispute and point out where those facts are to be found in the record. The Fifth Circuit has made clear that "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment, especially where, as here, the nonmoving party is well aware of the existence of such evidence. Rule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir. 1992); *see also Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim."); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988).

Even when specifically referred to, the "evidence" must be proven according to the rules of evidence (e.g. must be authenticated, not be hearsay, and otherwise be admissible evidence) and

cannot be based upon assumptions and speculation. For example, the Fifth Circuit has made clear that bare assertions from deposition testimony, without evidence supporting the claims during the deposition, are insufficient at the summary judgment stage. *Garrison Prop. & Cas. Co. v. Silva*, 652 F. App'x 240, 242 (5th Cir. 2016); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) ("[U]nsubstantiated assertions are not competent summary judgment evidence."); *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) ("Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment."); *Jones v. Lowndes Cty.*, 678 F.3d 344, 348 (5th Cir. 2012) ("However, the non-movant cannot avoid summary judgment simply by presenting '[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation.'" (quoting *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754 (5th Cir. 2002))); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence).

In the instant case, the issue of negligence was clearly denied by Defendants and put at issue in their motion for summary judgment. The CLH Defendants, joined by the Lee Murphy Defendants, have clearly moved for judgment as a matter of law on this issue:

> Plaintiffs cannot raise a genuine issue of material fact that CLH violated the standard of care in its handling of their cases.

(Doc. No. 95 at 51).

> Whether Plaintiffs can raise a genuine issue of material fact that Lee Murphy Defendants breached any duty of ordinary care (legal malpractice/negligence)?

(Doc. No. 98 at 5).

Plaintiffs have not demonstrated to this Court any evidence concerning the standard of care or showing that the performance of any of the lawyers or firms involved herein fell below that

16

standard. As such, there is no issue of material fact for a jury to consider. This Court cannot presume—even if Plaintiffs are correct in their statute of limitations assessment—that the Defendants were negligent. This case involves nationwide litigation in both state and federal court. It indisputably involves the use of class actions and aggregate settlements. Moreover, it is also undisputed that none of the Plaintiffs' claims were ever damaged or lost due to the alleged failure to timely file them. These issues require expert testimony to establish a fact issue as to both what the standard of care is and whether the Defendants complied with that standard. While there are references in the briefing that Plaintiffs have retained an expert, the Plaintiffs provide no actual evidence from the expert that creates a fact issue on liability.

The Court grants the Defendants' motion as to the claims of negligence.

## 2. Proximate Cause

In order for a plaintiff to prevail in a malpractice case he or she must prove proximate cause—in other words the act or omission comprising the alleged negligence must have actually caused the plaintiff damage. Proximate cause in Texas is composed of two elements: cause-in-fact and foreseeability. *W. Investments, Inc. v. Urena*, 162 S.W.3d 547 (Tex. 2005). "These elements cannot be established by mere conjecture, guess or speculation." *Id.* These both must be established by evidence, and in a summary judgment scenario, the non-movant must raise fact issues as to each in order to survive the motion. "Both breach of the standard of care and proximate cause must be proven by expert testimony." *Onwuteaka v. Gill*, 908 S.W.2d 276, 281 (Tex. App.—Houston [1st Dist.] 1995, no writ).

Defendants have denied that causation exists and have moved this Court for summary judgment on this point: "Regardless of everything else, CLH caused no damages…. Plaintiffs have no competent expert testimony regarding causation." (Doc. No. 95 at 53–54). The Lee Murphy Defendants also denied causation. "Whether Plaintiffs can raise a genuine issue of material fact

that any alleged breach of the duty of ordinary care by Lee Murphy Defendants caused damages to any of the Plaintiffs?" (Doc. No. 98 at 5). Plaintiffs have brought forth no evidence that any act or omission of any of the Defendants caused any damage to any Plaintiff.

First, Plaintiffs have not shown, assuming *arguendo* they are correct on limitations, any evidence of cause-in-fact. The test for cause-in-fact is whether the act or omission was a substantial factor in causing the injury without which the harm would not have occurred. *Taylor*, 395 S.W.3d 178 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The claimants were paid according to a formula developed by the Special Master. The statute of limitations was not a factor in this formula and there is *no* evidence that either the Special Master or the District Judge who approved the settlement knew, or even felt like, there was any issue to which limitations applied. According to the evidence presented, it was just not a factor. The criteria the Special Master used were: (1) whether a person had a revision or explant surgery; (2) whether a person had multiple revision or explant surgeries; (3) the age at the time of the implant; (4) the number of medical procedures before November 30, 2015; (5) whether the person was in advanced litigation and had gone through extensive discovery; and (6) a deduction for other potentially liable defendants. (*See e.g.* Doc. No. 95, Ex. 33 at 55). When the cause of action arose or when the underlying lawsuit was actually filed were not issues at any point in the litigation. In addition, each Plaintiff has now answered interrogatories where each concedes that none of the manufacturing defendants paid a lesser amount to settle because of the alleged limitations issue. (*See e.g.* Doc. No. 95, Ex. 48 at 3–4, 8–9, 13–14, 18–19, 23–24).

Moreover, there is no evidence of foreseeability, which is the second requirement of proximate cause. It is this aspect of proximate cause which invariably requires expert testimony in cases involving alleged professional malpractice, because it is almost always outside of a jury's common understanding. *Alexander*, 146 S.W.3d at 119–20. Here, there is no evidence that the

Defendants should have foreseen that any of their alleged wrongful acts or omissions would or could cause harm to any of the Plaintiffs.

Finally, to the extent one can read the Second Amended Complaint to include malpractice claims that suggest some alleged act of the Defendants led the Plaintiffs to participate in the aggregate settlement that they otherwise would not have participated in, but for the acts of the Defendants, each Plaintiff must prove the classic "case-within-a-case" ("suit-within-a-suit") in order to recover. When the plaintiff's allegation is that some failure on the attorney's part caused an adverse result in prior litigation, the plaintiff must produce evidence from which a jury may reasonably infer that the attorney's conduct caused the damages alleged. *Id.* at 117 (citing *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 181 (Tex. 1995)). Stated differently, here a plaintiff must show that, but for the malpractice, she would have followed a different course of action (here trial or single case settlement) and that this alternative course would have resulted in a more favorable result. To do this, the Plaintiffs must not only demonstrate fact issues as to the alleged legal malpractice, but also fact issues as to the defective products in the underlying TVM litigation. The Plaintiffs in this case have not even tried to make this showing. They have not only not brought forward any evidence to create an issue of material fact, they have not even argued it in their briefings.

For the above reasons, this Court grants summary judgment as to the claims of negligence or legal malpractice.

## B.      Breach of Fiduciary Duty

To prove a breach of fiduciary duty claim, one must prove: (1) the existence of a fiduciary relationship;[7] (2) a breach of that duty; (3) proximate cause; and (4) damages. When one seeks

---

[7] As in its discussion of legal malpractice, the Court will assume *arguendo* for purposes of this opinion that the Lee Murphy Defendants owed a fiduciary duty to all Plaintiffs, although the Court notes they are clearly contesting that issue as to some of the Plaintiffs.

actual damages (as opposed to a fee disgorgement) in a breach of fiduciary duty claim, one must prove causation. The Court notes the Plaintiffs have made claims for both damages and fee disgorgement. It will discuss the former first, but only after an analysis of the actual claim of breach.

### 1. Liability

As with the malpractice claims, the claims concerning breach of fiduciary duty primarily revolve around the alleged failure to file the lawsuits in a timely fashion. The Plaintiffs allege that the Defendants breached their collective fiduciary duties by: (1) missing the filing deadlines; (2) not disclosing to Plaintiffs that they missed the filing deadlines; (3) failure to disclose that claims were included in "aggregate settlements against which the statute of limitations had expired"; (4) recommending they enter into aggregate settlements that included claims against which the statute of limitations had expired; (5) requiring them to sign a disclosure letter "that was false because of the statute of limitations issue"; and (6) settling time-barred claims and collecting attorneys' fees on that settlement, while not telling the participants about limitations issues and by intentionally omitting to inform them about the limitations issue. The claims that the Defendants breached their fiduciary duty by failing to comply with Rule 1.08(f) of the Texas Disciplinary Rules of Professional Conduct, ABA Model Rule 1.8(g), and ABA Formal Opinion 06-438, as well as by not advising Plaintiffs that the attorneys' fees were to be shared by different law firms, are apparently unconnected to the limitations issue. The Court will address those claims unrelated to the limitations issue first.

First, Rule 1.08(f) does not establish a basis for civil liability, nor does it in any way set a standard for civil liability either for negligence or breach of fiduciary duty. The Texas Disciplinary Rules of Professional Conduct specifically provide that they "do not undertake to define standards of civil liability of lawyers for professional conduct" nor do they create substantive legal duties.

20

Texas Disciplinary Rules of Professional Conduct Preamble ¶¶ 14–16. Therefore, absent an expert opining that the standard of care encompasses the conduct discussed in the Texas rules, they are completely inapplicable. This Court has no such testimony.

The rules of the ABA have even less application. Unlike the Texas rules, they do not even apply to Texas lawyers. Less than 20% of the lawyers in America belong to the American Bar Association. Its membership is voluntary, and many members of the Bar find that the positions it takes (depending on the issue) do not represent the mainstream of the legal profession. Consequently, the ABA Model Rules, while instructive, do not, in and of themselves, set a standard of care. Moreover, those Rules have disclaimers similar to those found in the Texas Disciplinary Rules of Professional Conduct: "Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. In addition, violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation." ABA Model Rules of Professional Conduct: Preamble & Scope, ¶ 20. Consequently, unless an expert incorporated those rules as part of his/her testimony setting a standard of care, which again no one has, they do not in any fashion provide evidence suggesting liability for a breach of fiduciary duty. Finally, with respect to the claim that the Plaintiffs were not informed that the attorneys' fees were to be shared by different law firms, it, too, is not supported by any competent summary judgment evidence to which this Court has been referred. In fact, the uncontroverted evidence to which the Court has been referred proves just the opposite. Therefore, the Court grants the summary judgment motions on those issues.

The fiduciary duty claims that are tied to limitations fail for the same reason—this Court has not been provided with any competent summary judgment evidence which supports the claims that allegedly missing a limitations deadline under these circumstances was a breach of fiduciary

duty, or that the failure to inform the Plaintiffs about a limitations issue, which never came to fruition or in any way affected their settlement, is a breach of any duty. Absent expert testimony that lawyers have a fiduciary duty to warn a client about a possible defense, whether it has merit or not, this Court has no competent evidence of a breach of fiduciary duty.

### 2. Causation

Furthermore, with the exception of a fee forfeiture claim that will be discussed below, plaintiffs alleging a breach of fiduciary duty must prove causation—the "suit-within-a-suit"—just as they must with negligence claims:

> Our resolution of this case is based on *Taylor's failure to raise a fact issue with respect to the suit within a suit causation element of his claims. This causation is an element of a legal malpractice claim and a breach of fiduciary duty claim for damages based on representation in underlying litigation. See Finger*, 326 S.W.3d at 291–92 (former client asserting breach of fiduciary duty claim based on representation in prior suit must prove "suit within a suit" causation); *Smith v. Aldridge*, No. 14–11–00673–CV, 2012 WL 1071246, at *6 (Tex.App.-Houston [14th Dist.] March 29, 2012, no pet.) (assuming malpractice plaintiff's allegations supported an independent action for breach of fiduciary duty, plaintiff was required to prove "suit within a suit" to defeat summary judgment on that claim). *Because Taylor had the burden—but failed—to raise a fact issue on causation, it is immaterial whether Taylor asserted only malpractice claims, on the one hand, or whether he asserted both malpractice and breach of fiduciary duty claims, on the other.* Even if some of his allegations could form the basis for a breach of fiduciary duty claim, Taylor's failure to meet his burden with respect to causation vitiates both. We express no opinion as to whether Taylor asserted claims for breach of fiduciary duty as distinct from legal malpractice; rather, we conclude that, even if he had, his failure to raise a fact issue on the element of causation would render summary judgment proper on any such claim. *See Finger*, 326 S.W.3d at 291–92; *Smith*, 2012 WL 1071246, at *6.

*Taylor*, 395 S.W.3d at 189 (emphasis added).

The Plaintiffs' response, insofar as it can be read as seeking actual damages due to an alleged breach of fiduciary duty, is also devoid of any evidence establishing causation. For actual damages, a plaintiff must prove both that the breach of fiduciary caused the damages and the actual damages. Plaintiffs' response provides no competent summary judgment of either. As part of their burden in raising an issue of material fact as to causation, they must have competent expert

evidence of cause in fact and foreseeability—and again no evidence has been provided for either. *Alexander*, 146 S.W.3d at 119.

Before addressing fee forfeiture, the Court addresses one theme that seems to underpin many of the claims discussed above. It is clear that the Plaintiffs are trying to claim on the one hand they did not know (because they were not told by Defendants) about the so-called limitations problem at the time they settled. Yet on the other hand, they are also claiming they were forced to settle as part of the aggregate settlement *because* of the alleged limitations problems, that they argue prevented them from proceeding individually (and winning) with either the Defendants or with some other counsel representing them. Initially, the Court rules, once again, there is no competent summary judgment evidence to support such a claim. Moreover, this kind of claim would be the very essence of a case which would require proof of a "suit-within-a-suit" and Plaintiffs have not brought forth any evidence for either suit.

It also is important to note, however, that both these claims cannot be possible and therefore one of them borders on bad faith. This Court is not considering sanctions because it understands the right of a claimant to plead alternative theories and because it only considers sanctions in extreme cases. Nonetheless, the Plaintiffs either knew about the alleged limitations problems at the time they agreed to settle, or they did not know. Whether they knew or not is certainly a fact within their own knowledge so the need to plead alternatively is questionable. If they knew about the alleged problem, the allegations that they were not told are completely meritless and made in bad faith. If they did not know about the alleged limitations problem, the alleged problem could not have caused them to take any action that they otherwise would not have taken, and allegations that they were forced to join the settlement due to their concerns about the limitations problems would be in bad faith. Regardless, this Court has not been referred to any competent evidence supporting either theory—so it grants summary judgment on these claims as well.

Perhaps in recognition of this shortfall of proof of causation and actual damage, the Plaintiffs in this matter have pleaded for fee forfeiture and literally have pleaded (*see* Doc. No. 56, ⁋ 169) the seminal case of *Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999). That case clearly provides, under certain circumstances, for a recovery of the fees paid to an attorney who has breached his/her fiduciary duty to the client, even if the client has not suffered any actual damage. "Accordingly, we conclude that whether an attorney must forfeit any or all of his fee for a breach of fiduciary duty to his client must be determined by applying the rule as stated in section 49 of the proposed *Restatement (Third) of The Law Governing Lawyers* and the factors we have identified to the individual circumstances of each case." *Id.* at 245.

This Court need not delve into the ins and outs of the requirements of the *Restatement* or even the factors highlighted by the Supreme Court in the *Burrow v. Arce* opinion, because Plaintiffs have not provided any competent summary judgment evidence that raises a fact issue as to whether the Defendant violated a fiduciary duty.

## C.      Fraud by Nondisclosure

Fraud by nondisclosure, a subcategory of fraud, occurs when a party has a duty to disclose certain information and fails to disclose it. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). As stated above, to establish fraud by nondisclosure, the plaintiff must show: (1) the defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the nondisclosure, which resulted in injury. *See Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex. 2001) (explaining that there must be a duty to disclose); *Wise v. SR Dall., LLC*, 436 S.W.3d 402, 409 (Tex. App.—Dallas 2014, no pet.) (listing the elements for fraud by non-disclosure (citing *7979 Airport Garage, L.L.C. v. Dollar*

*Rent A Car Sys., Inc.*, 245 S.W.3d 488, 507 n.27 (Tex. App.—Houston [14th Dist.] 2007, pet. denied))). In general, there is no duty to disclose without evidence of a confidential or fiduciary relationship. *Ins. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).

In the instant case, with the exception of certain Plaintiffs about whom the Lee Murphy Defendants deny the existence of an attorney-client relationship, the Defendants admittedly were the attorneys for the Plaintiffs and that, in and of itself, establishes a fiduciary relationship. The Court will continue to assume *arguendo*, without so holding, that the CLH and Lee Murphy Defendants represented all of the Plaintiffs.

As one can see from the Second Amended Complaint, the entire cause of action is based upon the premise that the statute of limitations had run on Plaintiffs' claims, that this somehow harmed the Plaintiffs, and that the Defendants should have told the Plaintiffs about this and did not. These allegations are, at best, merely a rephrasing of their malpractice/breach of fiduciary duty complaints. Such a repurposing is not permitted under Texas law.

"A cause of action arising out of bad legal advice or improper representation is legal malpractice." *Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (citing *Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 481 (Tex. App.—Dallas 1995, writ denied)). Missing the statute of limitations certainly falls into this category. "As to Greathouse's allegations of fraud, . . . [w]e hold these claims amounted to nothing more than allegations of legal malpractice, and therefore, McConnell could have obtained summary judgment on the entire case by disproving, as a matter of law, one element of Greathouse's legal malpractice cause of action." *Id.* That is just what the Defendants are attempting to do in their motions for summary judgment.

The Texas common-law, that this Court must follow in diversity cases, is clear: whether the variant claim is cast as a breach of warranty claim, a fraud claim, a deceptive trade practice

claim, or a breach of contract claim—"a cause of action arising out of bad legal advice or improper representation is legal malpractice." *Rangel v. Lapin*, 177 S.W.3d 17, 24 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (citing authority). *See also, Goffney v. Rabson*, 56 S.W.3d 186, 194 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *Aiken v. Hancock*, 115 S.W.3d 26, 29 (Tex. App.—San Antonio 2003, pet. denied). "Regardless of the theory a plaintiff pleads, as long as the crux of the complaint is that the plaintiff's attorney did not provide adequate legal representation, the claim is one for legal malpractice." *Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 924 (Tex. App.—Fort Worth 2002, pet. denied).

This reasoning has led to a prohibition from "fracturing" a legal malpractice claim into causes of action outside of negligence or breach of fiduciary duty.[8]

> The rule against dividing or fracturing a negligence claim prevents legal-malpractice plaintiffs from opportunistically transforming a claim that sounds only in negligence into other claims. *See, e.g., Goffney v. Rabson*, 56 S.W.3d 186, 188–94 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). This analysis is analogous to determining whether claims are contract or DTPA claims or whether they sound in contract or tort. *See Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13–15 (Tex. 1996); *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493, 493–95 (Tex. 1991). If the gist of a client's complaint is that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, then that complaint should be pursued as a negligence claim, rather than some other claim. *See, e.g., Goffney*, 56 S.W.3d at 190–94.

---

[8] Some cases apply to this non-fracture rule to a claim for breach of fiduciary duty as well. *See Cuyler v. Minns*, 60 S.W.3d 209 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Others analyze the content of the alleged breach. If it sounds in a failure to disclose a conflict, self-dealing, improper use of client confidences, improperly benefitting from the representation, or similar deceptive behavior, the breach of fiduciary duty claim is considered independent of the malpractice claim. If the claim is focused upon inadequate representation, the claim cannot exist outside the malpractice cause. *See Aiken v. Hancock*, 115 S.W.3d 26 (Tex. App.—San Antonio 2003, pet. denied); *Goffney*, 56 S.W.3d at 193–94; *Gibson v. Ellis*, 126 S.W.3d 324, 330 (Tex. App.—Dallas 2004, no pet.). Since the actions here involved not only a claim for inadequate representation, but also the failure to disclose that inadequate representation, this Court opted to address both the legal malpractice claim as well as the breach of fiduciary duty claims—but this analysis does not resuscitate the claim of fraud by non-disclosure.

*Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179 (Tex. App.—Houston [14th Dist.] 2002, no pet.) *See also*, *Duerr v. Brown*, 262 S.W.3d 63 (Tex. App.—Houston [14th Dist.] 2008, no pet.) and *Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268 (Tex. App.—Austin 2002, pet. denied).

This Court holds that Plaintiffs' fraud by omission allegations sound at best in negligence/malpractice or at worst in breach of fiduciary duty, both of which this Court has addressed. Regardless of how they are cast, they cannot be split or fractured into fraud. One need only look at the active complaint to see why. The entirety of the fraud allegations is found in paragraphs 173 to 182 of the Second Amended Complaint. Paragraph 173 merely incorporates earlier allegations. Paragraph 174 sets out the elements of fraud by non-disclosure. Paragraphs 175–182 all pertain to the alleged failure to file Plaintiffs' claims within the appropriate limitations period and how that failure allegedly resulted in damage. Clearly, these are allegations grounded in malpractice and/or breach of fiduciary duty that cannot be recast into a fraud claim. As such, and since the Plaintiffs have not raised issues of material fact as to those causes of action, the Court grants Defendants' motions as to the fraud claim.

Moreover, even if the Court were able to glean a separate fraud cause of action out of malpractice or breach of fiduciary claims, it would still need expert testimony to raise a fact issue, as none of the issues here would be within the general understanding or common experience of a jury. While the attorney-client relationship in Texas is well-established and widely discussed in caselaw and secondary authorities, the mere existence of that relationship does not automatically place a duty on an attorney to tell a client about everything that has occurred, could possibly occur, or might never occur during the existence of the representation. Once again, expert testimony must set a standard for the existence of a duty to disclose and a subsequent breach of that duty. No such testimony/competent summary judgment evidence was provided. A quick review of the applicable ethical rule highlights why one needs such testimony. The Court does not cite this rule as a standard

of civil liability, but instead cites it to demonstrate the issues involved and why, even here, expert testimony is required. There are specific ethical rules that cover an attorney's communications with clients. For example, the Texas Disciplinary Rules of Professional Conduct state:

### Rule 1.03.    Communication

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

First, one notes it is a lawyer's duty to keep a client "reasonably informed." The Comments which are added to the Rules for illustrative purposes do not add to the obligations; however, like the Rule itself, they are informative. For example, both comments 2 and 3 recognize that there are many circumstances in which keeping a client fully informed may be "impractical" and even some circumstances where purposefully withholding information may be "justified."

Here, the allegations of nondisclosure concern the failure of the Defendants to inform the clients that their case was barred by limitations. First, there was not and is no such ruling to that effect; it is only a theory raised by the Plaintiffs long after their portion of the TVM litigation was concluded. Second, while the statute of limitations was pleaded as a defense in some of the cases, it is an affirmative defense and no defendant ever sought a ruling on that basis. Third, it was not used by anyone in any fashion when the gross settlement amount was negotiated or when the Court's Special Master devised the apportionment scheme that determined the net amounts in question. Fourth, by not pursuing the defense before settling the TVM litigation, defendants waived this defense. Fifth, the Defendants herein claim that the statute of limitations was tolled by law and by contract. None of the factors mentioned above can even be disputed.

Consequently, in the absence of being presented with any competent summary judgment evidence that could raise a fact issue as to duty or the materiality of this information, this Court

finds as a matter of law that the non-disclosed information was not material. Further, even if it were material, the mere existence of the attorney-client relationship does not compel an attorney to disclose every bit of information that exists concerning her client's case. Therefore, there must be expert guidance as to whether an attorney had a duty to disclose and no such evidence exists in the current record. More importantly, to recover for fraud by nondisclosure, a plaintiff must prove not only that the non-disclosed information was material, but also that the plaintiff relied on the nondisclosure and that this reliance caused the plaintiff harm. In this context, there is no proof of any harm being caused by this alleged nondisclosure.

Finally, to prove causation and damages in a litigation context, the Plaintiffs must prove their recovery would have been greater if the information had been disclosed. This means proof of a "case-within-a-case" and Plaintiffs have not brought forth any competent summary judgment evidence on any issue that would raise a fact issue in this case or the underlying case.

The same kind of argument that Plaintiffs make here was made in *Ersek v. Davis & Davis, P.C.*, 69 S.W.3d at 274–74. In that legal malpractice case, the plaintiff tried to escape his lack of evidence (controverting affidavit) from an expert by pleading a DTPA claim in addition to the negligence claim. This ploy was rejected.

> Ersek also claims that he and his wife provided affidavits raising fact issues. Lay witnesses, however, are not competent to controvert an expert's opinion, which the firm provided with Keene's affidavit. *See Anderson*, 808 S.W.2d 54, at 55. Furthermore, Ersek claims that some of the allegations against Davis & Davis do not require expert testimony. The appellant reaches this conclusion by fracturing his cause of action into claims of legal malpractice and violation of the DTPA. In the case of a legal malpractice claim, there is no need to fracture the issues. As succinctly stated in *Sledge v. Alsup*:
>
>> Nothing is to be gained by fracturing a cause of action arising out of bad legal advice or improper representation into claims for negligence, breach of contract, fraud or some other name. If a lawyer's error or mistake is actionable, it should give rise to a cause of action for legal malpractice with one set of issues which inquire if the conduct or omission occurred, if that conduct or omission was malpractice and if so, subsequent issues on causation and damages.

> Nothing is to be gained in fracturing that cause of action into three or four different claims and sets of special issues.... The ultimate issue is whether there has been a breach of duty which causes damage.

759 S.W.2d 1, 2 (Tex. App.–El Paso 1988, no writ). Accordingly, Ersek [because he had no expert testimony] can offer no evidence to support his cause of action. This ground supports the summary judgment, and we need not address the other ground asserted.

*Id.*

The Plaintiffs' response to the Defendants' motions for summary judgment is likewise deficient. Attempting to split a malpractice/breach of fiduciary duty claim into a fraud claim does not get one around the need for expert testimony.

Since Plaintiffs have not come forward with any testimony to establish an issue of material fact, their fraud claim must likewise fail.

Therefore, this Court grants the Defendants' motions for summary judgment.

**V.    Conclusion**

The Court grants the Motions for Summary Judgment filed by the CLH and Lee Murphy Defendants. (Doc. Nos. 95, 98). To the extent the Lee Murphy Defendants raised other issues in their earlier Motion for Summary Judgment (Doc. No. 96), it is denied without prejudice as moot. The Defendants' Motion to Bifurcate Trial (Doc. No. 119) and their Motions in Limine (Doc. Nos. 118, 122) are also denied as moot.

SIGNED at Houston, Texas this 15th day of April, 2021.

Andrew S. Hanen
United States District Judge